**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| **Arthur Stanley Jones,** Petitioner -vs- **Charles L. Ryan, et al.,** Respondents | CV-09-0926-PHX-DGC (JRI) **REPORT & RECOMMENDATION On Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254** |

## I. MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona State Prison Complex at Florence, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on April 30, 2009 (Doc. 1), together with a Brief in Support (Doc. 6). On October 9, 2009, Respondents filed their Answer (Doc. 15), limited to a statute of limitations and procedural default defenses. Petitioner filed a Reply on February 12, 2010 (Doc.21).

The Petitioner's Petition is now ripe for consideration. Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

### A. FACTUAL BACKGROUND & PROCEEDINGS AT TRIAL

On March 12, 1999, Petitioner was indicted in a 76 count indictment on various sex offense charges concerning minors. (Resp. Exh.[1] A, Indictment.) Before trial, all but 17

---

[1] (Exhibits to the Answer, Doc. 15, are referenced herein as "Resp. Exh. ___"; exhibits to the Petition, Doc. 1, are referenced as "Pet. Exh. ___"; exhibits to the Reply, Doc.

counts were dismissed. (Resp.Exh. B, M.E. 10/25/99.) Petitioner proceeded to trial on the 17, and was convicted on 17 counts of sexual exploitation of minor, arising out of his possession of seventeen printouts of images depicting children engaged in sexual activity downloaded from the internet. (Pet.Exh. Mem. Dec. 1/30/01 (found at Doc. 1, p. 51) at 1-2.) On January 3, 2000, Petitioner was sentenced to seventeen consecutive sentences of 24 years in prison, a total of 408 years. (Resp.Exh. C, Sentence.)

Petitioner filed a post-trial Motion to Vacate Judgment, which he describes as his first post-conviction relief proceeding, arguing that the lack of evidence that the children were actual children rather than computer generated or "morphed" images, rendered his conviction a violation of free speech under the U.S. and Arizona constitutions. (Pet.Exh. Mot. Vacate (Doc. 1 at 58).)[2] The motion was denied. (Petition, Doc. 1 at "4" (physical p. 57).)

### B. PROCEEDINGS ON DIRECT APPEAL

**Prosecution's Appeal** - The prosecution appealed the suppression of a video tape seized at Petitioner's home and the trial court's ruling on a hearsay objection at the suppression hearing. On August 10, 2000, the Arizona Court of Appeals denied the appeal. (Rep. Exh. F, Mem. Dec. 8/10/00.)

**Petitioner's Appeal** - Petitioner then filed a direct appeal arguing there was insufficient evidence to support the convictions because there was no evidence that the children were real children and not computer generated graphic art images of fictional children. (Pet. Exh., Opening Brief (found at Doc. 1, p. 3) at 7.) In a decision issued January 30, 2001, the Arizona Court of Appeals rejected the argument, finding not only that the pictures themselves were sufficient evidence, but that Petitioner had stipulated that they

---

21, are referenced as "Rep.Exh. ___".)

[2] Because Petitioner has interwoven his exhibits with his Petition (Doc. 1), not sequentially numbered the pages, and not labeled his exhibits, references to the "physical" page of the docket entry will be provided when referencing the Petition and its exhibits. Petitioner's Reply (Doc. 21) properly attaches and labels the exhibits.

depicted children.  (Pet.Exh. Mem. Dec. 1/30/01 (found at Doc. 1, p. 53-55)  at 3-5.)

Petitioner did not seek further review by either the Arizona Supreme Court or the United States Supreme Court.  (Petition, Doc. 1 at "3" (physical page 56).)

### C.  PROCEEDINGS ON FIRST POST-CONVICTION RELIEF

On or about May 31, 2000, Petitioner filed, through counsel, his first Post-conviction Relief Petition. (Pet. Exh. PCR Pet. (Doc. 1-1 at 1).)

Petitioner argued that trial counsel was ineffective for stipulating and admitting in his argument to the jury that the images were of real children. (*Id.*)  On September 18, 2001, without conducting an evidentiary hearing, the PCR Court concluded that Petitioner had failed to provide anything to show prejudice, and dismissed the Petition.  (*Id.* at 2.)

Petitioner did not seek further review.[3]  (Petition, Doc. 1 at "4" (physical p. 57).)

### D.  PROCEEDINGS ON SECOND POST-CONVICTION RELIEF

On March 22, 2007, Petitioner commenced his second PCR proceeding by filing  his Notice of Post-Conviction Relief (Pet.Exh. PCR Not. (Doc. 1-1 at 17); Petition for Post-Conviction Relief (*id.*(Doc. 1-1 at 24)); and Request for Evidence (*id.* (Doc. 1-1 at 15)).)

Petitioner argued: (1) a change in the state law; (2) actual innocence; (3) illegal and unconstitutional sentence; (4) unconstitutional use of pre-sentence report; (5) improper use of suppressed video tape at sentencing; (6) unconstitutional enhancement of his sentence; (7) prosecutorial misconduct; and (8) ineffective assistance of counsel at sentencing. (Pet.Exh. PCR Pet. (Doc. 1-1 at 29-30).)

On April 23, 2007, the PCR court dismissed the Petition, finding the claims barred because they "either were or should have been raised on direct appeal or in the first Rule 32 proceeding." (Pet.Exh. M.E. 4/23/07 (Doc. 1-3 at 24) at 1.)  The court also found the Petition

---

[3] Petitioner provides a letter from PCR counsel advising that counsel had not seen the minute entry disposing of the PCR petition, proposing a motion for delayed review, and cautioning that the potential for success was limited. (Pet.Exh. Letter 4/6/02 (Doc. 1-1 at 6).)

- 3 -

untimely, and that his change in the law claims under *State v. Hazlett*, 205 Ariz. 523, 73 P.3d 1258 (App. 2003) and *Blakely v. Washington*, 542 U.S. 296 (2004) either did not represent a change in the law, or did not apply retroactively.  (*Id.* at 2.)

Petitioner filed a Motion for Rehearing (Pet.Exh. Motion 5/15/07 (Doc. 1-3 at 1)) which was denied on May 30, 2007 (Pet. Exh. M.E. 5/30/07 (Doc. 1-3 at 26)).

Petitioner then filed a Petition for Review (Pet. Exh. (Doc. 1-3 at 23)), which was denied by the Arizona Court of Appeals on March 19, 2008 (Pet.Exh. Order 3/19/08 (Doc. 1-4 at 4)).

Petitioner then filed a Petition for Review by the Arizona Supreme Court (Pet.Exh. (Doc. 1-4 at 3)), which was denied on September 29, 2008 (Resp.Exh. E, Order 9/29/08).

**E.  PRESENT FEDERAL HABEAS PROCEEDINGS**

**Petition** - Petitioner commenced the current case by filing his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on April 30, 2009 (Doc.1), together with a Brief in Support (Doc. 6).  Petitioner's Petition asserts the following seven grounds for relief:

(1) Actual Innocence; Miscarriage of Justice;

(2) Sufficiency of the Evidence;

(3) Brady Violation; Miscarriage of Justice;

(4) Significant Change in the Law, Unconstitutional Conviction;

(5) Ineffective Assistance of Counsel;

(6) Prosecutorial Misconduct; Omission of Jury Instructions; and

(7) Illegal Sentence.

**Answer** - On October 9, 2009, Respondents filed their Answer (Doc. 15), arguing that the Petition is barred by the habeas statute of limitations, and that Petitioner's federal claims are all procedurally defaulted.

**Reply** - On February 12, 2010, Petitioner filed his Reply (Doc. 21), arguing that his Petition was not untimely because: (1) he was unaware of the statute of limitations; (2) the "factual predicate" upon which his claim is based was not available; (3) state law permits

delayed filings; (4) state law permitting claims based on change in the law rendered his state conviction not final; (5) he has shown a miscarriage of justice based upon his actual innocence and a "significant change in the law." (*See* Reply, Doc. 21 at 8-9.)  Petitioner argues that he did fairly present his claims to the state court and thus exhausted his state remedies (*id.* at 29-42), and he has shown cause and prejudice because the factual predicates to his claims were not previously available (*id.* at 42-43).

### III. APPLICATION OF LAW TO FACTS

#### A. TIMELINESS

#### 1. One Year Limitations Period

Respondents assert that Petitioner's Petition is untimely.  As part of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress provided a 1-year statute of limitations for all applications for writs of habeas corpus filed pursuant to 28 U.S.C. § 2254, challenging convictions and sentences rendered by state courts.  28 U.S.C. § 2244(d).  Petitions filed beyond the one year limitations period are barred and must be dismissed.  28 U.S.C. § 2244(d)(1).

#### 2. Commencement of Limitations Period

**Conviction Final** - The one-year statute of limitations on habeas petitions generally begins to run on "the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Petitioner's direct review ended when his convictions and sentences were **affirmed by a decision** filed **January 30, 2001**. (Pet.Exh. Mem. Dec. 1/30/01 (found at Doc. 1, p. 53-55) at 3-5.)  Although Petitioner did not seek review by the Arizona Supreme Court, his judgment did not become final until 30 days later when his time to seek review by the Arizona Supreme Court expired.  *See* Ariz. R. Crim. P. 31.19(a).

Neither party provides copies of the mandate. *See Celaya v. Stewart*, 691 F.Supp.2d 1056, 1074 (D.Ariz. 2010) (discussing date of mandate as date Arizona conviction final after

- 5 -

failure to seek review by Arizona Supreme Court). According to the Maricopa County Superior Court's website docket, the mandate was filed of March 20, 2001. (*See* http://www.superiorcourt.maricopa.gov/docket/CriminalCourtCases/caseInfo.asp for case "CR1999-003525", last accessed 11/17/10.)

Because it does not affect the outcome the undersigned presumes for purposes of this Report & Recommendation that the mandate was issued on March 20, 2001 and thus, Petitioner's judgement became **final on March 20, 2001**, and his one year **began to run on March 21, 2001**.

Petitioner argues that Arizona law permits a conviction to be reopened on post-conviction review, for example upon a change in the law or subsequently discovered claims, *see* Ariz.R.Crim.P. 32.4(A) and 32.1(g) and (h), his conviction cannot be considered final. (*See* Reply, Doc. 21 at 21-25.)[4] Petitioner's argument ignores the plain language of 28 U.S.C. § 2244(d)(1)(A), which does not espouse some form of metaphysical finality. Rather, that section plainly defines finality as the "conclusion of direct review." Thus, any opportunity for Petitioner, through some delayed process under Arizona's collateral, post-conviction process, would not affect the conviction's status as "final" under subsection (d)(1)(A).

**Discovery of Factual Predicate** - Petitioner argues that he is entitled to a delayed commencement date because he did not learn of the decision in *State v. Hazlett*, 205 Ariz. 523, 73 P.3d 1258 (App. 2003) (child pornography statute applied only to depictions of actual minors), until December 2006. (Reply, Doc. 21 at 16-18.) He also argues that he was not aware of the existence of the habeas statute of limitations. (*Id.* at 9-16.)[5]

Although the conclusion of direct review normally marks the beginning of the

---

[4] Petitioner intermingles in this argument his assertion that there has been in a change in the law, entitling him to a delayed filing. That claim is addressed hereinafter.

[5] Petitioner's argument about his lack of knowledge of the habeas statute of limitations is plainly asserted as a delay in discovery of a factual predicate. However, it is more properly raised as a basis for equitable tolling, and will be addressed in that regard hereinafter.

1  statutory one year, § 2244(d)(1)(D) does provide an alternative of "the date on which the
2  factual predicate of the claim or claims presented could have been discovered through the
3  exercise of due diligence." Thus, where despite the exercise of due diligence a petitioner was
4  unable to discover the factual predicate of his claim, the statute does not commence running
5  on that claim until the earlier of such discovery or the elimination of the disability which
6  prevented discovery.

7  Rather than asserting new facts, Petitioner asserts a delay in discovery of a legal
8  precedent or the statute of limitations. Changes in law are addressed by subsection (d)(1)(C).
9  Absent unusual circumstances, such as a vacating of a petitioner's own prior conviction, the
10 issuance of a state court decision does not constitute the discovery of a "factual predicate"
11 for a habeas claim. *See Shannon v. Newland*, 410 F.3d 1083, 1089 (9th Cir. 2005). Similarly,
12 although ignorance of the statute of limitations may cause a petitioner to file late, that
13 ignorance is not a lack of a factual predicate (or even a legal predicate) necessary for him to
14 assert a claim. As noted in *Whalem/Hunt v. Early*, a "petitioner's knowledge of the legal
15 basis of his claims is not the same as knowledge of the procedural rules that must be
16 complied with in order to get a hearing on the merits." 233 F.3d 1146, 1148 (2000)
17 (Tashima, C.J., concurring).

18 Even if this provision applied, it would only provide a delayed commencement date
19 for Petitioner's claim founded upon the recently discovered factual predicate. *See Souliotes*
20 *v. Evans*, - - - F.3d - -- , 2010 WL3619908, *6 (9th Cir. 2010) ("§ 2244(d)(1) requires
21 consideration of the appropriate triggering date for each claim presented in the application").

22 The factual predicate of Petitioner's claim addressed by *Hazlett*, *i.e* that set out in
23 Ground 4 of the Petition, and is founded upon Petitioner's assertion that evidence was
24 required that the persons depicted in the printouts were actually minors. (*See* Brief, Doc. 6
25 at 5-10.) The facts underlying that claim, e.g. the limited evidence on the matter, has been
26 the subject of litigation by him since his first PCR proceeding. Indeed, Petitioner argues that
27 even at trial he "asked counsel to raise issue and have State prove the computer images were
28 of 'real children.'" (Brief, Doc. 6 at 12.)

Accordingly, Petitioner is not entitled to a delayed commencement of his claims in Ground 4.

**Change in the Law** - Petitioner also asserts *Hazlett* constitutes a change in the law, entitling him to a delayed commencement.[6] Section 2244(d)(1)(C) provides that the habeas limitations period can run from "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." The "Supreme Court" referenced in that subsection is the United States Supreme Court. *Hazlett* was a decision of Division 1 of the Arizona Court of Appeals. Thus, the issuance of the *Hazlett* decision could not trigger § 2244(d)(1)(C).

**Summary** - Petitioner has shown no reason to apply any commencement date other than the finality of his conviction. That occurred when his time for seeking direct review from the Arizona Supreme Court expired. Thus, his one year statute of limitations period began running on March 22, 2001.

### 3. Normal Expiration of Year

Barring any applicable tolling, Petitioner's limitations period would have commenced running on March 22, 2001 and it **expired on March 21, 2002**, one year later.

### 4. Statutory Tolling

The AEDPA provides for tolling of the limitations period when a "properly filed application for State post-conviction or other collateral relief with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). The statutory tolling applies during

---

[6] Petitioner argues that *Blakely* is a change in the law, but to avoid non-retroactivity problems, argues that it is not necessary to the resolution of his Ground 7 asserting an illegal sentence. (*See* Reply, Doc. 21 at 19-22.) Even if *Blakely* were necessary to his claim, it would not delay the start of his statute of limitations because § 2244(d)(1)(C) only applies where the new law has been "and made retroactively applicable to cases on collateral review." *Blakely* has not been made retroactively applicable. *See Cook v. U.S.*, 386 F.3d 949, 950 (9th Cir. 2004).

the entire time during which the application is pending, including interludes between various stages of appeal on the application. The "AEDPA statute of limitations is tolled for 'all of the time during which a state prisoner is attempting, through proper use of state court procedures, to exhaust state court remedies with regard to a particular post-conviction application.' " *Nino v. Galaza*, 183 F.3d 1003, 1006 (9th Cir. 1999) (quoting *Barnett v. Lemaster*, 167 F.3d 1321, 1323 (10th Cir.1999)). *See also Carey v. Saffold,* 536 U.S. 214, 217 (2002).

**First PCR Petition** - Petitioner's first PCR Petition was filed on May 31, 2000. (Pet. Exh. PCR Pet. (Doc. 1-1 at 1).) Normally, in Arizona, a PCR proceeding is commenced by the filing of notice of post-conviction relief. *Isley v. Arizona Department of Corrections*, 383 F.3d 1054, 1055-56 (9th Cir. 2004). Neither Petitioner nor Respondents provide copies of such a notice or reference its date of filing. According to the Maricopa County Superior Court's website docket, Petitioner filed a Notice of Post-Conviction Relief on March 7, 2001. (*See* http://www.superiorcourt.maricopa.gov/docket/CriminalCourtCases/caseInfo.asp for case "CR1999-003525", last accessed 11/17/10.)

Because it does not affect the outcome of this proceeding, the undersigned presumes for purposes of this Report & Recommendation that such a notice was filed on that date, and thus the limitations period was tolled from it inception through the termination of the first PCR proceeding.

That PCR proceeding remained pending at least until September 18, 2001, when the PCR Court dismissed the petition. (Resp.Exh. D, M.E. 9/18/01.)

Although a number of other circuits have done so, the Ninth Circuit has not yet finally decided whether the time during which a habeas petitioner could have, but did not, seek further review in the state courts of a state court decision, is part of the time that the petition is pending.[7] The Supreme Court has plainly held that statutory tolling does not extend to a

---

[7] As noted in *Celaya v. Stewart*, 691 F.Supp.2d 1046, 1072 (D.Ariz. 2010), the Ninth Circuit did consider in *Bunney v. Mitchell*, 241 F.3d 1151 (9th Cir. 2001) that the term "pending" would not extend to unsought review, that decision was subsequently withdrawn.

- 9 -

1  state petitioner's time for seeking certiorari review by that court, based upon the reference
2  in § 2244(d)(2) to "state" proceedings. *See Carey v. Saffold,* 536 U.S. 214 (2002). Because
3  it does not affect the outcome, the undersigned assumes for purposes of this Report &
4  Recommendation that Petitioner is entitled to tolling for the thirty days in which he could
5  have sought review by the Arizona Court of Appeals. *See* Ariz. R. Crim. P. 32.9(c) (30 days
6  to petition for review).

7  Petitioner argues, albeit indirectly, that he could have sought further, even more
8  delayed review, as advised by his PCR counsel who had failed to take note of the decision
9  on the PCR petition. (Reply, Doc. 21 at 9-10.) Inasmuch as petitioner never sought nor
10 obtained such delayed review, that is purely conjecture on the part of Petitioner and counsel.
11 *See Jones v. Schriro*, 2006 Wl 2547290, *2 (D.Ariz. 2006) (finding unresolved motion for
12 delayed filing insufficient to extend time for PCR petition for review).

13 Even if such a potential should be considered, it could not make up for the years of
14 delay by Petitioner. By the date of counsel's letter, April 6, 2002, counsel and Petitioner
15 were both aware of the decision. As noted by the Arizona Supreme Court, "the party
16 asserting a valid reason for non-compliance with the time requirements [of Rule 32.9(c)] has
17 a heavy burden in showing the court why the non-compliance should be excused." *State v.*
18 *Pope,* 130 Ariz. 253, 256, 635 P.2d 846, 849 (1981). Respondents argue that, assuming that
19 the date of this letter were treated as the mailing of the PCR court's decision, Petitioner's
20 petition for review (or, perhaps a motion for a delayed petition for review) should have been
21 filed within 35 days thereafter (including the 5 additional days pursuant to Ariz. R. Crim. P.
22 1.3). Certainly one would not expect a party to be permitted a longer time to take action after
23 a lost notice than permitted from a timely received one. *Cf. Guillory v. Roe,* 329 F.3d 1015,
24 1018, n.1 (9th Cir. 2003) (ordinarily, thirty days after elimination of a roadblock justifying
25 equitable tolling should be sufficient to file). Thus, for purposes of this Report &
26 Recommendation, the undersigned will presume that Petitioner's time for filing a motion for

---

28 The undersigned finds the reasoning of *Bunney* compelling, but does not rely upon it to resolve this matter.

1 delayed filing and/or his petition for review should have been filed by May 11, 2002. Respondents propose the addition of a five day period for delivery of such a petition. (Answer, Doc. 15 at 9, n. 3.) [8]

Thus, with the aid of the foregoing presumptions, the undersigned finds that Petitioner's PCR proceeding was no longer pending as of May 16, 2002, and his one year would have **begun running again as of May 17, 2002**. As a result of the foregoing presumption, Petitioner would have still had one year thereafter, or until **May 18, 2003** in which to file his federal petition.

**Second PCR Petition** - On March 22, 2007, Petitioner commenced his second PCR proceeding by filing his Notice of Post-Conviction Relief (Pet.Exh. PCR Not. (Doc. 1-1 at 17); Petition for Post-Conviction Relief (*id.*(Doc. 1-1 at 24)); and Request for Evidence (*id.* (Doc. 1-1 at 15)).)

Under the prisoner mailbox rule, for federal habeas purposes *pro se* prisoner filings are generally deemed "filed" when they are delivered to prison officials for mailing. *See Anthony v. Cambra*, 236 F.3d 568 (9th Cir. 2000). Because it does not affect the outcome, the undersigned presumes, for purposes of this Report & Recommendation, that the prisoner mailbox rule would apply, that Petitioner delivered his second PCR documents for mailing on the date of his signatures on those documents, **March 14, 2007**, and that is the commencement date of this proceeding.

By that date, his one year had been expired for almost four years. Once the habeas statute has run, a subsequent post-conviction or collateral relief filing does not reset the running of the one year statute. *Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001); *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003).[9]

---

[8] Petitioner argues that Rule 32.9 simply does not admit of any delayed petitions. (Reply, Doc. 21 at 11.) That argument is disposed of by *Pope*, which was decided in 1981 and thus had long been the controlling law in Arizona at the time Petitioner's first PCR was dismissed.

[9] Section 2244(d)(2) only affords tolling for "properly filed" petitions. *Pace v. DiGuglielmo*, 544 U.S. 408 (2005). Because the undersigned finds that the second PCR

**Summary re Statutory Tolling** - Based on the foregoing, including the various presumptions made in Petitioner's favor, Petitioner is entitled to statutory tolling during the pendency of his first PCR proceeding, extending the expiration of his one year to May 18, 2003.

### 5. Timeliness of Federal Habeas Petition

Petitioner's Petition was actually filed on April 30, 2009. (Doc. 1) The undersigned presumes for purposes of this Report and Recommendation that, under the prisoner mailbox rule, the **effective filing date** of Petitioner's Petition was the date of the Petition, or **April 24, 2009**. (Doc. 1 at 14 (Doc. 1-4 at physical page 38).) By that date, however, Petitioner's limitations period had been expired for almost seven years. Thus, Petitioner's habeas petition was untimely.

### 6. Equitable Tolling

Although Petitioner does not assert a right to equitable tolling, he does assert that he failed to timely file his habeas petition because: (1) he was unaware of the habeas statute of limitations; (2) PCR counsel had advised him his claims were unlikely to prevail; (3) the form for habeas petitions did not identify the statute of limitations; (4) he was proceeding *pro se;* and (5) he did not have the factual predicate of his claims available to him. (Reply, Doc. 21 at 9-15.)

"Equitable tolling of the one-year limitations period in 28 U.S.C. § 2244 is available in our circuit, but only when 'extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time' and 'the extraordinary circumstances were the cause of his untimeliness.'" *Laws v. Lamarque*, 351 F.3d 919, 922 (9th Cir. 2003). *See also Holland v. Florida,* 560 U.S. ____, 130 S.Ct. 2549 (2010).

---

petition was filed after the limitations period expired, the undersigned does not attempt to resolve whether the petition (which was dismissed as untimely despite its assertions of changed in the law, and precluded or defaulted) was "properly filed."

- 12 -

> To receive equitable tolling, [t]he petitioner must establish two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way. The petitioner must additionally show that the extraordinary circumstances were the cause of his untimeliness, and that the extraordinary circumstances ma[de] it impossible to file a petition on time.

*Ramirez v. Yates,* 571 F.3d 993, 997 (9th Cir. 2009) (internal citations and quotations omitted). "Indeed, 'the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule.' " *Miranda v. Castro,* 292 F.3d 1063, 1066 (9th Cir. 2002) (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir.).

**Relevant Time Periods** - Here, the relevant time periods, when the one year was running, was from the conclusion of his first PCR proceeding, presumed to be on May 16, 2002, until the expiration of his limitations period one year later.

**Arguments 1, 3 and 4 - Pro Se Status and Ignorance of Statute of Limitations** - In his arguments 1, 3, and 4, Petitioner complains that he was unaware of the habeas statute of limitations, the court's form of petition failed to put him on notice of it, and he was an untrained, *pro se*, prisoner litigaant.

Withe regard to Petitioner's lack of legal prowess, "[i]t is clear that *pro se* status, on its own, is not enough to warrant equitable tolling." *Roy v. Lampert,* 465 F.3d 964, 970 (9th Cir. 2006). A prisoner's "proceeding *pro se* is not a 'rare and exceptional' circumstance because it is typical of those bringing a § 2254 claim." *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000). *See also Rasberry v. Garcia,* 448 F.3d 1150, 1154 (9th Cir. 2006) ("a *pro se* petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling").

With regard to Petitioner's lack of notice or knowledge of the statute, "it is well established that ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing." *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir.2000) (quotation marks and citation omitted) (as cited in *Rasberry*, 448 F.3d at 1154). In *Whalem/Hunt v. Early,* 233 F.3d 1146, 1148 (9th Cir.2000) (*en banc*) (*per curiam*), the Ninth Circuit observed that lack of access to the federal habeas statute of limitations, as opposed

1 to knowledge of it, might be cause for equitable tolling, e.g. where the statute of limitations was not available in the prison's library. However, Petitioner does not suggest that the statute was not available, just that he didn't go looking for it. That is not sufficient to justify equitable tolling.

With regard to his complaint about the approved forms for habeas petitions, Petitioner simply complains that the form he received in May 2002 failed to include a warning of the limitations period, while the one received in 2007 or later makes reference to a timeliness requirement. (Reply, Doc. 21 at 12-13.) Petitioner does not assert any affirmative misrepresentation on the form. Nor does he assert any basis for an obligation on the courts to assume the duty of legal advisor to Petitioner and thus to include warnings about the statute of limitations on its forms. The undersigned knows of no basis for such an obligation. Moreover, the absence of such advice would not constitute an extraordinary circumstance, but one faces by every habeas petitioner who had been provided the Courts' forms.

**<u>Argument 2 - Discouragement by Counsel</u>** - In his argument 2, Petitioner complains that his PCR counsel's letter left him with the impression that further litigation would be futile. However, PCR counsel made no representation about the advisability of filing a federal habeas petition, but simply the limited prospects of a state "petition for review." (Pet.Exh. Letter 4/6/02 (Doc. 1-1 at 6).)

Moreover, that advice was limited to the viability of the single claim asserted in that PCR proceeding, *i.e.* the claim of ineffective assistance related to the "actual minors" theory. That advice would not explain Petitioner's failure to pursue relief on his other claims.

Petitioner attempts to get around that limitation by arguing that he was concerned about being caught in a wedge by the second or successive petition limitations. (Reply, Doc. 21 at 14.) That argument presupposes, however, that Petitioner in fact disbelieved counsel about the viability of his claim, and thus made a tactical decision to delay filing until he could better bolster the claim. In that case, counsel's advice would not have been the causative factor, but instead Petitioner's tactical decision to delay in hopes of being better suited to assert his claim in the future. Such tactical considerations may tempt a habeas

petitioner to delay filing, but they do not prevent a petitioner from filing. Equitable tolling is available only where filing is impossible, not where it is simply inconvenient.[10] Petitioner is not entitled to equitable tolling for an erroneous tactical choice. *See Harris v. Carter,* 515 F.3d 1051, 1055 (9th Cir. 2008) ("failure to file a timely petition [as] the result of oversight, miscalculation or negligence on [petitioner's] part . . . would preclude the application of equitable tolling").[11]

Further, even if it is assumed that counsel's prognostication was wrong, that would not entitle Petitioner to equitable tolling. Although an attorney's behavior can establish the extraordinary circumstances required for equitable tolling, mere negligence or professional malpractice is insufficient. *Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir.2001). A "garden variety claim of excusable neglect,' such as a simple 'miscalculation' that leads a lawyer to miss a filing deadline does not warrant equitable tolling.' " *Holland*, 560 U.S. at _____ (slip opinion at 19). Rather, the attorney's misconduct must rise to the level of extraordinary circumstances. *Id.* An unadorned miscalculation on the viability of a claim would, at best, be simple negligence. *Cf. Spitsyn v. Moore,* 345 F.3d 796, 801 (9th Cir. 2003) (allowing equitable tolling where petitioner's counsel was hired almost a year in advance, failed to do anything to prepare the petition or to respond to numerous letters and phone calls, and withheld petitioner's file for over two months after the limitations period expired); *Holland*, *supra* (discussing potential for finding of extraordinary circumstances where counsel misinformed petitioner about filing deadline, failed to communicate conclusion of state appeals, and failed to communicate with petitioner at all over a period of years, all despite repeated requests by petitioner).

---

[10] Permitting equitable tolling merely because counsel rendered frank advice that a claim may be unsuccessful would result in avoidance of the statute of limitations for those claims least likely to have merit.

[11] Further, if Petitioner's argument were accepted that the 2003 decision in *Hazlett* constituted a change in the law or newly discovered facts, then arguably he would have had no successive petition concerns. *See* 28 U.S.C. § 2244b(2) (permitting successive petitions founded upon new law, new evidence, or Petitioner's actual innocence).

**Argument 5 - Access to Factual Predicate** - Finally, in his argument 5, Petitioner complains that he did not have the factual predicate of his claims available to him. (Reply, Doc. 21 at 15.) The only factual predicates Petitioner points to are changes in the law. (*Id.* at 15, n. 16.) The lack of favorable law does not prevent the filing of federal habeas petition; at most it may make the petition unsuccessful. Moreover, changes in the law are specifically addressed in the commencement provisions of §2244(d)(1)(D), and for the reasons discussed herein above, Petitioner does not qualify for relief under that section.

**Diligence** -   Even if extraordinary circumstances prevent a petitioner from filing for a time, equitable tolling will not apply if he does not continue to diligently pursue filing afterwards. "If the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing." *Valverde v. Stinson*, 224 F.3d 129, 134 (2nd Cir. 2000).

Even if this Court accepted Petitioner's claims that he was unable to file his federal habeas petition until after his second PCR proceeding was filed and then concluded, Petitioner waited from September 29, 2008 until April 30, 2009 to file his federal petition. Ordinarily, thirty days after elimination of a roadblock should be sufficient. *See Guillory v. Roe*, 329 F.3d 1015, 1018, n.1 (9th Cir. 2003). Petitioner offers nothing beyond his un-extraordinary status as a *pro se* prisoner to explain his delay of over 7 months after the conclusion of his second PCR proceeding to file his federal habeas petition.

**Summary** - Petitioner fails to proffer facts in any of his five arguments which would show extraordinary circumstances that made it impossible for him to make a timely federal habeas filing. While Petitioner suggests a number of factors to establish an impediment, they are either not extraordinary circumstances, or he fails to make allegations that connect those factors to his actual failure to timely file his petition, or fails to show diligence in pursuing his petition once the impediments were lifted. Under these circumstance, the undersigned finds no basis for equitable tolling.

**7. Actual Innocence**

Finally, Petitioner argues that he must be permitted to proceed on his delinquent habeas petition to avoid a miscarriage of justice because he is actually innocent. While actual innocence does provide relief from a procedural default so as to avoid a miscarriage of justice, *see Murray v. Carrier*, 477 U.S. 478, 496 (1986), there is no actual innocence exception to the AEDPA statute of limitations. *Lee v. Lampert*, 610 F.3d 1125, 1131 (9th Cir. 2010).

**8. Summary re Statute of Limitations**

Petitioner allowed seven years to elapse between his receipt of notice of the dismissal of his first PCR proceeding (April 6, 2002) and the filing of his federal habeas petition on April 24, 2009. Even if it were presumed that he could show equitable tolling until he was able to pursue his second PCR proceeding, and during that proceeding, Petitioner failed to diligently pursue filing his federal habeas petition thereafter, instead waiting seven months thereafter to file with this Court. Consequently, Petitioner's federal habeas petition is barred by the statute of limitations.

**B. EXHAUSTION & PROCEDURAL DEFAULT**

Respondents also argue that Petitioner's state remedies on his claims were not properly exhausted and are procedurally defaulted. Because the undersigned finds Petitioner's petition plainly barred by the applicable statute of limitations, the exhaustion and procedural default issues are not reached.

/ /

/ /

### IV. CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Such certificates are required in cases concerning

detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment. The recommendations if accepted will result in Petitioner's Petition being resolved adversely to Petitioner. Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

**Standard Not Met** - Provided the recommendations herein are followed in the district court's judgment, that decision will be on procedural grounds. To the extent that Petitioner's claims are rejected on procedural grounds, under the reasoning set forth herein, the undersigned finds that "jurists of reason" would not "find it debatable whether the district court was correct in its procedural ruling." Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Petition, a certificate of appealability should be denied.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the Petitioner's Petition for Writ of

Habeas Corpus, filed April 30, 2009 (Doc. 1) be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that to the extent the reasoning of this Report & Recommendation is adopted, that a certificate of appealability **BE DENIED**.

## V. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See also* Rule 8(b), Rules Governing Section 2254 Proceedings. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues, *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*), and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

DATED: December 6, 2010

_____
JAY R. IRWIN
United States Magistrate Judge

S:\Drafts\OutBox\09-0926-001r RR 10 11 05 re HC.wpd